**In re CENDANT CORPORATION LITIGATION**

No. CIV.A. 98–1664.

United States District Court,
D. New Jersey.

Oct. 2, 1998.

OPINION

WALLS, District Judge.

On August 4, 1998, the time of the selection of lead plaintiffs in this matter,[1] the Court announced that it would conduct an auction to determine the lowest qualified bidder to represent plaintiffs as lead counsel. In response, by September 17, 1998, nineteen firms, jointly and singly, submitted twelve bids in the following manner: Seven firms bid for appointment as lead counsel to the non-Prides claims, two firms as to both the Prides and non-Prides claims, and three firms for Prides claims only. It is of utmost concern to the Court that this opinion, the bidders' identities and the contents of their bids be sealed until resolution of this matter. This is done to maintain adversarial integrity, that of strategy and tactics, which is the prerogative of all parties, plaintiffs and defendants. Accordingly, each bid is identified only by a number, 1 of 12 to 12 of 12.

*See* September 8, 1998 opinion.

---

1. Lead plaintiffs were subsequently changed as a result of actual and apparent conflict of interest.

388

In re Cendant

**Fee Bid Schedule (Excluding Prides Claims)**

**Fees as Percentage (%) of Total Class Recovery**

PHASE AT WHICH LITIGATION IS RESOLVED

| Bidders | Recovery during pleadings through adjudication of any motion to dismiss | | | | | | | | | Recovery during discovery through adjudication of SJ motion | | | | | | | | | Recovery after adjudication of SJ motion through trial verdict | | | | | | | | | Recover post-trial | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1st 100 ml¹ | 2d 100 ml | 3d 100 ml | Next 50 ml | Next 50 ml | Next 50 ml | Next 50 ml | Bonus of 1 ml | Over 500 ml | 1st 100 ml | 2d 100 ml | 3d 100 ml | Next 50 ml | Next 50 ml | Next 50 ml | Next 50 ml | Bonus of 1 ml | Over 500 ml | 1st 100 ml | 2d 100 ml | 3d 100 ml | Next 50 ml | Next 50 ml | Next 50 ml | Next 50 ml | Bonus of 1 ml | Over 500 ml | 1st 100 ml | 2d 100 ml | 3d 100 ml | Next 50 ml | Next 50 ml | Next 50 ml | Next 50 ml | Bonus of 1 ml | Over 500 ml |
| 1 of 12 | 2 | | | 0 | 0 | 0 | 0 | Bonus of 1 ml | Cap of 3.25 ml | 2 | | | 0 | 0 | 0 | 0 | Bonus of 1 ml | Cap of 7 ml | 4.5 | 4 | 2 | 0 | 0 | 0 | 0 | Bonus of 1 ml | Cap of 11.5 ml | 4.5 | 4 | 2 | 0 | 0 | 0 | 0 | Bonus of 1 ml | Cap of 11.5 ml |
| 3 of 12 | 3 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 7 | 6 | 5 | 4 | 4 | 4 | 4 | 4 | 4 | 10 | 8 | 7 | 6 | 6 | 6 | 6 | 6 | 6 | 11 | 9 | 8 | 7 | 7 | 7 | 7 | 7 | 7 |
| 4 of 12 | 0 | 5 | 5 | 3 | 5 | 5 | 5 | 5 | 10 | 0 | 5 | 7.5 | 5 | 5 | 7.5 | 7.5 | 7.5 | 12.5 | 5 | 12.5 | 12.5 | 10 | 12 | 12.5 | 12.5 | 12.5 | 17.5 | 7.5 | 15 | 15 | 12.5 | 12.5 | 15 | 15 | 15 | 20 |
| 6 of 12 | 4 | 4 | 3 | 3 | 2 | 2 | 2 | 2 | 2 | 10 | 10 | 10 | 6 | 6 | 6 | 6 | 6 | 3 | 15 | 15 | 12 | 12 | 12 | 6 | 6 | 6 | 6 | 15 | 15 | 12 | 12 | 12 | 6 | 6 | 6 | 6 |
| 8 of 12 | 5 | 5 | 5 | 5 | 3 | 3 | 3 | 3 | 3 | 18.5 | 14 | 11.5 | 10 | 10 | 2.5 | 10 | 7.5 | 6 | 20 | 18.5 | 12.5 | 12.5 | 7.5 | 7.5 | 7.5 | 7.5 | 7.5 | 20 | 18.5 | 12.5 | 12.5 | 12.5 | 12.5 | 7.5 | 7.5 | 7.5 |
| 9 of 12 | 2 | 3 | 4 | 6 | 7 | 7 | 8 | 8 | 9 | 2 | 3 | 4 | 5 | 6 | 7 | 6 | 8 | 9 | 3 | 4 | 5 | 6 | 7 | 8 | 8 | 9 | 10 | 3 | 4 | 5 | 6 | 7 | 8 | 8 | 9 | 10 |
| 10 of 12 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1.5 | 1 | 1 | 1.5 | 1.5 | 1.5 | 1.5 | 1.5 | 1.5 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2.5 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2.75 |
| 11 of 12 | 3.5 | 3.5 | 3 | 2.5 | 3 | 3 | 3 | 3.5 | 3.5 | 7 | 7 | 6 | 5 | 6 | 7 | 7 | 7 | 7 | 10 | 10 | 8.5 | 7.5 | 7.5 | 8.5 | 8.5 | 10 | 10 | 10 | 10 | 8.5 | 7.5 | 7.5 | 7.5 | 8.5 | 10 | 10 |
| 12 of 12 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | R | E | D | | | | | | A | C | T | E | D | | | | | | | | | | | | | | | | | | | | | | | |

¹ All recovery increments are in dollars

² Two times hourly rate, plus 75% of recovery, capped at $1 million total fee.

³ Two times hourly rate, plus 75% of recovery, capped at $1.75 million total fee

⁴ Two times hourly rate, plus 5% of recovery capped at $2.25 million total fee

## In re Cendant

### Fee Bid Schedule (Prides Claims)

<u>Fees as Percentage (%) of Total Class Recovery</u>

| Bidders | Recovery during pleadings through adjudication of any motion to dismiss | | | | | Recovery during discovery through adjudication of SJ motion | | | | | Recovery after adjudication of SJ motion, through trial verdict | | | | | Recovery after adjudication of SJ motion, through trial | | | | | Recovery post-trial | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1st 40 mil | Next 40 mil | Next 40 mil | Next 40 mil | Over 240 mil | 1st 40 mil | Next 40 mil | Next 40 mil | Next 40 mil | Over 240 mil | 1st 40 mil | Next 40 mil | Next 40 mil | Next 40 mil | Over 240 mil | 1st 40 mil | Next 40 mil | Next 40 mil | Next 40 mil | Over 240 mil | 1st 40 mil | Next 40 mil | Next 40 mil | Next 40 mil | Over 240 mil |
| 2 of 12 | | | | | | R | E | D | A | C | T | E | D | | | | | | | | | | | | |
| 5 of 12 | | | | | | | | | | | | | | | | | | | | | | | | | |
| 7 of 12 | | | | | | | | | | | | | | | | | | | | | | | | | |
| 10 of 12 | | | | | | | | | | | | | | | | | | | | | | | | | |
| 12 of 12 | | | | | | | | | | | | | | | | | | | | | | | | | |

Basic liability in this case has been conceded by the major corporate defendant. No one needs to be reminded that it was Cendant's public admission on April 15, 1998 that spawned this litigation. There are other defendants, but it is doubtful that these other

defendants, en masse, will resolve these matters before Cendant. The Court does not believe, at this time, that there are intricate damage issues, but does recognize the need to explore the nature and extent of any involvement of the other defendants, individual and corporate, and the representations made by Cendant's corporate predecessor(s) in 1997 and earlier years.

■ The Court, for the purposes of analysis, gave greater emphasis to the middle sections of the bid grid, that is, from discovery through summary judgment and from summary judgment through trial. It is noteworthy that this analysis comports with the bidders' implicit evaluation of the case, evidenced by their bids. The Court now briefly reviews each of the bids. The most important criteria of the Court were, among others:

1) Litigation experience, including

a) demonstrated ability to try successfully a case, if necessary, and

b) demonstrated ability to achieve an effective resolution by settlement;

2) fiscal ability to maintain the litigation; and

3) a fee schedule that represents a realistic incentive to pursue a determined resolution of the plaintiffs' cause at reasonable cost.

1. *Bidder 1 of 12*

Bidder 1 of 12 submitted a bid with a declining fee scale, ranging from 2.5% to 1.5% from discovery through a summary judgment motion, and 4.5% to 2.0% from summary judgment through trial. This fee schedule is not a realistic evaluation of the efforts necessary to obtain optimum results for the plaintiffs or to try this case, if required. The bid is contrary to the interests of the putative class.

2. *Bidder 2 of 12*

**REDACTED**

3. *Bidder 3 of 12*

Bidder 3 of 12 has not demonstrated an ability to take a large securities case to the end, that is, to trial. While it has had some success as lead counsel and liaison counsel in similar matters, it is not evident that it has the personnel and fiscal ability to maintain the present litigation.

4. *Bidder 4 of 12*

Bidder 4 of 12 has not demonstrated sufficient securities trial litigation experience. It is very questionable that this bidder would be able to adequately represent the interests of the plaintiffs.

5. *Bidder 5 of 12*

**REDACTED**

6. *Bidder 6 of 12*

Bidder 6 of 12 meets all of the criteria required by the Court. It has a demonstrated history of both trial and settlement success. It has shown that it can shoulder the fiscal burden of maintaining this litigation and can readily provide whatever performance bond required by the Court. The proposed fee schedule is realistic in the context of likely results, both for discovery and trial, and as such represents a fee calculated to engender and maintain counsel's pursuit of the optimum recovery for the plaintiffs. However, its fee schedule is higher than that of another equally qualified bidder.

7. *Bidder 7 of 12*

**REDACTED**

8. *Bidder 8 of 12*

This bidder has demonstrated an ability to obtain positive results for its clients, both in trial and by way of settlement. It has the fiscal ability to post the necessary performance bond as required by the Court. However, its proposed fee schedule is higher than that of other qualified bidders.

9. *Bidder 9 of 12*

Bidder 9 of 12 meets all of the criteria. It has a demonstrated history of both trial and settlement success. It can shoulder the fiscal burden of maintaining this litigation and can readily provide whatever performance bond is required by the Court. Its proposed fee schedule is realistic in the context of likely results, both for discovery and trial, and as such represents a fee calculated to engender and maintain counsel's pursuit of the optimum recovery for the plaintiffs.

**10.** *Bidder 10 of 12*

It does not appear that this bidder has a history of actual trial litigation, although it has obtained significant settlements for its clients. The Court accepts counsel's representation that it would post a performance bond in any amount which the Court directs. The proposed fee schedule, which begins at 1% and escalates to 2% in the event of a $500 million settlement during the discovery period, and a flat 2% for settlement in any amount during trial activity, is not, upon examination, professionally sound. One must view this "magnanimous" offer against the realities of the cost of litigation, the deployment and commitment of experienced counsel and support personnel of several firms, and the required expenses and expenditures associated with such commitment. Unless the eventual monetary recovery in this case is in the billions, such an apparently "cheap" fee schedule does not make professional sense. In addition, this quasi-philanthropic effort does not auger well as a realistic incentive to pursue a determined resolution of the plaintiffs' cause. The Court is constrained to conclude that the bid schedule is unrealistic and against the interests of the class.

**11.** *Bidder 11 of 12*

Bidder 11 of 12 has not demonstrated an ability to take this matter to its possible conclusion by way of trial. Its fee schedule is higher than that of others.

**12.** *Bidder 12 of 12*

### REDACTED

■  It will also be noted that among the factors which disqualified one bidder was the circumstance of its having accused a lead plaintiff of wrongdoing, if not criminal activity. Under those circumstances, it would be contrary to good practice and ethically dubious to permit that bidder to serve as lead counsel to that plaintiff.

### REDACTED

For the above reasons, bidder 9 of 12 is the lowest qualified bidder for counsel to the non-Prides claims.

Because the above bidders are not present counsel to either of the lead plaintiffs, pres-ent counsel will inform the Court not later than October 13, 1998, as to whether either or both will exercise the right of first refusal, the acceptance of the terms of the lowest qualified bids.

**SO ORDERED.**